IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LINDA L. LoCOCO,

      Plaintiff,

  vs.                          CASE NO. 2:05-CV-1012

                                     MAGISTRATE JUDGE KING

MEDICAL SAVINGS INSURANCE CO.,

      Defendant.

## OPINION AND ORDER

In this diversity action, plaintiff Linda L. LoCoco seeks recovery of medical benefits allegedly due her now-deceased husband under a policy of insurance issued by defendant. Defendant denies liability and asserts in a counterclaim for declaratory judgment that benefits were properly denied because expenses initially incurred were related to a pre-existing condition and because the policy later lapsed. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendant's Motion for Summary Judgment*. Doc. Nos. 28, 29. For the reasons that follow, defendant's motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff and her husband, Joseph LoCoco, applied for health insurance from defendant on May 8, 2002. *Insurance Application* attached to *Complaint*. The application was accepted and defendant issued Mr. and Mrs. LoCoco medical insurance effective May 29, 2002. *Deposition of Linda L. LoCoco* at 34-35; Doc. No. 25. The insurance policy premiums were to be paid by an automatic withdrawal from the LoCocos' bank account on or about the 15th of

each month.  *Id.* at 31-32.

On May 14, 2002, Mr. LoCoco presented to a local emergency room complaining of a cough and shortness of breath.  *Exhibit A* attached to *Deposition of Satinder S. Bhullar, M.D* ("*Bhullar Dep.*"); Doc. No. 27.  Based on a chest x-ray, Mr. LoCoco was diagnosed with left upper lobe pneumonia.  *Bhullar Dep.* at 8.  The radiology report also suggested follow up x-rays, since an obstructive mass in the lung could not be ruled out.  *See also* Exhibit 2, p.22, attached to *Bhullar Dep.*  Mr. LoCoco was instructed to seek follow up treatment with his family physician.  *Bhullar Dep.,* at 8.  *See also* Exhibit 2, p.3, attached to *Bhullar Dep.*

On May 15, 2002, Mr. LoCoco saw his family physician, Satinder S. Bhullar, M.D., who ordered a CAT scan to determine if Mr. LoCoco's lung condition was related to cancer, chronic obstructive pulmonary disease or some other illness.  *Id.* at 8, 18, 19.  Dr. Bhullar testified that, "[w]henever you see something like that [upper lobe pneumonia] in a smoker, you have to follow up for cancer of the lung."  *Id.* at 8.  The May 15, 2005, CAT scan indicated a left upper lobe lesion, Exhibit 2, p.12, attached *Bhullar Dep.*  Dr. Bhullar referred Mr. LoCoco to Attila A. Lenkey, Jr., M.D., a pulmonary specialist, who saw Mr. LoCoco on May 29, 2002.  *Deposition of Attila A. Lenkey, Jr., M.D.* ("*Lenkey Dep.*") at 29, Doc. No. 26.

Dr. Lenkey noted that the May 14, 2002, emergency room x-ray "certainly looked suggestive of a tumor in the left upper lung."  *Id.* at 29.  Although lung cancer was "high on the list" of suspected conditions, however, "it certainly wasn't the only thing."  *Id.* at 34.  Dr. Lenkey ordered a bronchoscopy.  *Id.* at 28-29.  Based on the May 30, 2002 bronchoscopy, Dr. Lenkey diagnosed lung cancer and, on June 5, 2007, recommended oncology and surgery.  Exhibit 2, p.18, attached to *Bhullar Dep.*

2

As Mr. LoCoco incurred bills for the treatment, he submitted those bills to defendant for payment under the insurance policy. *Affidavit of Terri Crowe*[1] ("*Crowe Aff.*") ¶ 2 attached to *Defendant's Motion for Summary Judgment*. On September 4, 2002, defendant advised plaintiff that her husband's cancer was a pre-existing condition for which the policy provided no coverage during the first twelve months. *Id.*

On approximately February 26, 2003, defendant cancelled the LoCoco insurance policy effective January 14, 2003, because the automatic withdrawal for the January 2003 premium failed for insufficient funds. *Affidavit of Brian Davis*[2] *("Davis Aff.")* ¶ 2 attached to *Defendant's Motion for Summary Judgment*.

On October 21, 2005, plaintiff filed this action in state court alleging claims of breach of the insurance contract, bad faith failure to pay Mr. LoCoco's medical claims and bad faith cancellation of the insurance policy. *See Complaint*. On November 9, 2005, defendant removed this action to this Court. *See Notice of Removal*. On November 13, 2006, defendant filed *Defendant's Motion to for Summary Judgment*. Doc. Nos. 28, 29. On December 1, 2006, plaintiff filed her memorandum *contra* defendant's motion ("*Plaintiff's Memorandum in Opposition*"), Doc. No. 32, and on December 15, 2006, defendant filed it reply in support of its motion for summary judgment ("*Defendant's Reply*"), Doc. No. 37.

---

[1] Ms. Crowe is the supervisor of defendant's claims department. *Crowe Aff.* ¶ 1.

[2] Mr. Davis is defendant's chief financial officer. *Davis Aff.* ¶ 1.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

## III. ANALYSIS

Plaintiff contends that defendant acted in breach of its contract of insurance by failing to pay medical bills related to Mr. LoCoco's lung cancer and by cancelling the policy. Plaintiff also alleges that defendant acted in bad faith. Defendant moves for summary judgement on all plaintiff's claims, arguing that: (A) Mr. LoCoco's lung cancer was a pre-existing condition under the applicable contract language and it was therefore under no obligation to pay the medical expenses incurred in connection with that condition during the first 12 months of the policy term, (B) that it properly cancelled Mr. LoCoco's insurance policy when he failed to pay

the premium due, and (C) it did not act in bad faith by refusing to pay Mr. LoCoco's medical bills and by canceling the insurance policy. This Court agrees.

### A. Pre-Existing Conditions

The insurance policy at issue excludes coverage for pre-existing conditions during the first twelve (12) months:

> We will not pay any benefits of this policy for loss due to a pre-existing condition or a natural progression of a pre-existing condition . . . .
>
> However, this limitation will not apply to a loss incurred more than 12 months after a person first becomes a covered person.
>
> The term "pre-existing condition" means an injury or illness, including a pregnancy, for which medical advice, diagnosis, care, or treatment, including use of prescription drugs, was recommended or received from a licensed health practitioner during the 12 months immediately preceding the effective date of coverage.

*Policy* attached to *Complaint*.

Defendant argues that Mr. LoCoco's lung "cancer was an illness 'for which medical advice, diagnosis, care, or treatment . . . was recommended or received' in the 12 months before May 29, 2002, the effective date of coverage." *Defendant's Motion for Summary Judgment* at 7. Plaintiff, however, contends that he did not <u>receive</u> medical advice, diagnosis, care or treatment for lung cancer in the 12 months prior to May 29, 2002. *Plaintiff's Memorandum in Opposition* at 3, 9.

> Dr. Bhullar had been Joe LoCoco's doctor since September 1997. Before May 14, 2002, he had never treated Joe for lung cancer. . . . The doctor testified that he was not aware of Joe ever receiving any medical advice, diagnosis, care, treatment or prescription drugs from a licensed health practitioner relative to lung cancer before May of 2002.

\*   \*   \*

> After the visit with Dr. Bhullar on May 14, 2002, the doctor ordered a CAT scan. The CAT scan is not only for cancer, but also chronic obstructive pulmonary disease and other issues.

*Id.* at 3-4 (citing *Bhullar Dep.* at 6-8, 18).

Plaintiff's argument that he received no treatment or care for the lung cancer prior to the effective date of the policy misses the mark. The policy at issue includes in the definition of "pre-existing condition" an "illness ... for which medical advice, diagnosis, care, or treatment" was either received or <u>recommended</u>, within the twelve (12) months prior to the effective date of the policy. The record establishes that, on May 14, 2002, and again on May 15, 2002, Mr. LoCoco was advised to undergo further diagnostic testing of a lung condition ultimately diagnosed as lung cancer. Although Mr. LoCoco did not <u>receive</u> advice for, or diagnosis, care or treatment of his lung cancer on these dates, his lung cancer constituted an illness for which medical advice was recommended prior to the effective date of the policy, *i.e.,* May 29, 2002. Thus, the condition appears to satisfy the policy's definition of pre-existing condition for which no benefits will be paid during the first twelve (12) months of the policy.

Plaintiff cites to *Goshorn v. Hospital Care Corp.,* 46 Ohio App. 3d 47 (Ohio Ct. App. 1989), for the proposition that a pre-existing condition exclusion does not include a condition that was not diagnosed until after the effective date of the policy, even though the condition actually existed prior to that date. In *Goshorn,* however, the condition, congenital mitral valve prolapse, was not only undiagnosed prior to the effective date of the policy, but was also entirely asymptomatic prior to that date. *Id.,* at 48. In the case presently before the Court, on the other hand, the lung condition ultimately diagnosed as lung cancer was symptomatic prior to the effective date of the LoCoco policy; indeed, those symptoms brought Mr. LoCoco to the

6

emergency room on May 14, 2002 and led to the diagnostic tests that eventually culminated in the cancer diagnosis.

Plaintiff also argues that the policy's definition of "pre-existing condition" is ambiguous and should therefore be construed liberally in her favor. Initially, the Court notes that it is not disputed that this diversity case is governed by Ohio contract law.

> "It is well-settled law in Ohio that insurance policies should be construed liberally in favor of the insured." *Yeagar v. Pacific Mut. Life Ins. Co.*, 166 Ohio St. 71 (Ohio 1956), paragraph one of the syllabus. However, under contract principles, "words in a policy must be given their plain and ordinary meaning, and only where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage." *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 89 (Ohio 1989).

*Blue Cross & Blue Shield Mut. v. Hrenko*, 72 Ohio St. 3d 120, 122 (1992). This Court concludes that the contract language at issue is not ambiguous but must instead be given its plain and ordinary meaning. Accordingly, even when viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact as to whether Mr. LoCoco's lung cancer constituted a pre-existing condition as that phrase is defined in the insurance policy.

**B.     Cancellation of Policy**

On approximately February 26, 2003, defendant cancelled the LoCoco insurance policy effective January 14, 2003, because the automatic withdrawal premium payment for January 2003 failed for insufficient funds. *Davis Aff.* ¶ 2. The insurance policy at issue provides that coverage can be terminated if premiums remain unpaid for more than 31 days:

> Grace Period: The primary insured has 31 days from each premium due date (except the first) in which to pay the premium then due. The primary insured's coverage under the policy will stay in force during this grace period.
>
> If the premiums are not paid within this grace period, coverage under the policy

>will then be terminated. . . . In any case, the primary insured must pay us all unpaid premiums, including premium for the grace period.
>. . .
>
>For All Covered Persons: A covered person's insurance will automatically stop on the earlier of:
>
>(A) the date the policy is terminated;
>(B) the end of the grace period after the primary insured fails to pay any required premium when due.

*Policy* attached to *Complaint*.

In this action, plaintiff does not dispute that the automatic withdrawal failed for insufficient funds, nor does she dispute that the premium remained unpaid during the grace period. Instead, plaintiff argues that neither she nor her insurance agent were notified by defendant of the impending lapse of the policy and, further, that defendant could not reasonably conclude that the LoCoco's intended to cancel the policy after Mr. LoCoco's lung cancer had been diagnosed. *Plaintiff's Memorandum in Opposition* at 6-9, 14.

The insurance policy at issue in this action does not require defendant to notify the insured or the insured's agent before cancellation of the policy. Instead, the policy contemplates termination should the premium remain unpaid during the grace period. Plaintiff does not dispute that the premium remained unpaid during the 31 day grace period that began on approximately January 15, 2003. Under the policy, defendant was entitled to cancel to policy, effective January 14, 2003, when that premium remained unpaid for 31 days. Under these circumstances, plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial" with regard to the termination of the LoCoco insurance policy. *See Anderson*, 477 U.S. at 250. Defendant is entitled to summary judgment on this claim.

    **C.**     **Bad Faith**

8

It is well-established in Ohio that "an insurer has a duty to act in good faith in the processing and payment of the claims of its insured." *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 302 (1988). "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554 (1994). This Court concludes that defendant was justified in refusing to pay Mr. LoCoco's medical bills and in canceling the policy. Because Mr. LoCoco's lung cancer was a pre-existing condition for which no benefits were due for the first 12 months of coverage, and because the January 2003 premium remained unpaid during the policy's grace period, there is no evidence upon which a jury could reasonably find for plaintiff on her bad faith claim. *See Anderson*, 477 U.S. at 251. Defendant is therefore entitled to summary judgment on this claim.

**WHEREUPON** *Defendant's Motion for Summary Judgment*, Doc. No. 28, is **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of defendant and against plaintiff.

June 26, 2007   *s/ Norah McCann King*
Date        Norah McCann King
            United States Magistrate Judge